UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WAYNE EDWARD STEIGER, | ) Case No. EDCV 14-0027-JPR |
| Plaintiff, | ) |
| vs. | ) **MEMORANDUM OPINION AND ORDER** |
| | ) **AFFIRMING COMMISSIONER** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his application for Social Security disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed October 8, 2014, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

**II. BACKGROUND**

Plaintiff was born on September 11, 1964. (Administrative Record ("AR") 162.) He completed eighth grade (AR 42), and he worked as an electronics technician and tractor-trailer truck driver (AR 65-66, 167).

On June 14, 2010, Plaintiff submitted an application for DIB, alleging that he had been unable to work since March 3, 2009, because of "[b]ack and neck injury" and "possible cancer under tongue."[1] (AR 162, 166.) After his application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge. (AR 96.) A hearing was held on August 7, 2012, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert and Plaintiff's fiancée, Norma Perez. (AR 38-77.) In a written decision issued August 16, 2012, the ALJ found Plaintiff not disabled. (AR 21-31.) On November 7, 2013, the Appeals Council denied Plaintiff's request for review. (AR 1.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept

---

[1] Plaintiff clarified at the hearing that the lesion under his tongue was not cancerous and did not interfere with his ability to work. (AR 49.)

2

as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV.  THE EVALUATION OF DISABILITY

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

### A.  The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled

and the claim must be denied. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, he is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

available in the national economy. § 404.1520(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 404.1520; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

  B. <u>The ALJ's Application of the Five-Step Process</u>

 At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 3, 2009, the alleged onset date. (AR 23.) At step two, he concluded that Plaintiff had the severe impairments of "degenerative joint disease of the lumbar spine with radiculopathy,[3] status post lumbar fusion at L5-S1 with residual back pain and probable pseudoarthritis, status post hardware removal and augmentation of fusion at L5-S1, and mild lateral recess stenosis at L4-5." (<u>Id.</u>) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 25.) At step four, he found that Plaintiff had the RFC to perform light work except that he could "occasionally climb ramps and stairs"; was "prohibited from climbing ladders, ropes, and scaffolds"; could "frequently balance, stoop, kneel, crouch, and crawl"; "should avoid working around unprotected heights and hazardous machinery"; and could "use the bilateral lower extremities for frequent pushing and pulling." (<u>Id.</u>) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past work as a truck driver and electronics installer. (AR 30.) At step five, the ALJ found that Plaintiff could perform jobs

---

 [3] Radiculopathy is disease of the spinal cord. <u>See</u> <u>Stedman's Medical Dictionary</u> 1503 (27th ed. 2000).

that existed in significant numbers in the national economy. (Id.) Accordingly, he found Plaintiff not disabled. (AR 31.)

## V. DISCUSSION

Plaintiff contends that the ALJ erred in assessing the testimony of Norma Perez, a lay witness and Plaintiff's fiancée, and in failing to consider one aspect of the treating physician's opinion. (J. Stip. at 5.)

### A. Any Error in the ALJ's Failure to Address the Lay Witness's Testimony Was Harmless

Plaintiff contends that the ALJ erred because he did not "acknowledge much less address" Perez's testimony. (J. Stip. at 6-8.) For the reasons discussed below, any error was harmless and remand is not warranted on this ground.

#### 1. Applicable law

"'In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work.'" Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (quoting Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006)); see also § 404.1513(d) (statements from therapists, family, and friends can be used to show severity of impairments and effect on ability to work). Such testimony is competent evidence and "'cannot be disregarded without comment.'" Bruce, 557 F.3d at 1115 (emphasis in original) (quoting Nguyen v. Chater, 100 F.3d 1462, 1467 (9th Cir. 1996)); Robbins, 466 F.3d at 885 ("[T]he ALJ is required to account for all lay witness testimony in the discussion of his or her findings."). When rejecting the testimony of a lay witness, an ALJ must give specific reasons germane to that witness. Bruce, 557 F.3d at

1115; see also Stout, 454 F.3d at 1053; Nguyen, 100 F.3d at 1467. An ALJ's failure to address a lay witness's testimony is harmless if it is "inconsequential to the ultimate nondisability determination in the context of the record as a whole." Molina v. Astrue, 674 F.3d 1104, 1122 (9th Cir. 2012) (internal quotation marks omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008). That happens when "'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" Molina, 674 F.3d at 1122 (alterations in original) (quoting Buckner v. Astrue, 646 F.3d 549, 560 (8th Cir. 2011)).

    2.   Analysis

In determining Plaintiff's RFC, the ALJ discredited Plaintiff's allegations regarding the severity of his upper-back, neck, and hip pain because they were inconsistent with the medical evidence and his daily activities and because Plaintiff had not complied with his treatment regimen. (AR 26-27.) Plaintiff has not challenged on appeal the ALJ's credibility determination regarding his own statements and testimony.

Perez heard Plaintiff's testimony at the hearing (AR 41) and then testified herself (AR 71-76). The ALJ did not address her testimony in his written decision. (See AR 25-30.) Although that was error, see Bruce, 557 F.3d at 1115, it was harmless because Perez described the same limitations as Plaintiff did in his own testimony, and the ALJ's reasons for rejecting Plaintiff's testimony "appl[ied] with equal force" to Perez's testimony. Molina, 674 F.3d at 1122.

The ALJ first rejected Plaintiff's allegations because of his "inconsistency in reporting his activities of daily living." (AR 26); see Tommasetti, 533 F.3d at 1039 (ALJ may consider claimant's daily activities in assessing his credibility); see also Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (in weighing credibility, ALJ may consider daily activities and "inconsistencies either in claimant's testimony or between [his] testimony and [his] conduct" (alteration omitted)).  As the ALJ noted, in an "Exertion Questionnaire" dated September 1, 2010, Plaintiff stated that his back injury prevented him from doing chores around the house because of "excruciating pain."  (AR 172.)  Because of back and leg pain it was "hard for [Plaintiff] to sit or stand or even drive for any one period of time" (id.), though he acknowledged that he could drive up to 30 miles at a time (AR 173).  He indicated that he could not go grocery shopping "any more cause it[']s too much work."  (Id.)

At the hearing, by contrast, Plaintiff testified that he occasionally washed dishes, made the bed, did laundry, and "once in a while" watered the yard.  (AR 41.)  He also testified that he could drive himself 30 miles to go to doctor's appointments, "pay a couple bills here or there," and go "to the stores."  (AR 42.)  He also occasionally drove one hour to family gatherings. (Id.)  He no longer did hobbies like "hiking, fishing, [and] riding dirt bikes" very much.  (AR 58.)  He explained that his "wife ha[d] to carry everything" when they went fishing.  (Id.) He added, "So it's [sic] kind of makes you not feel like a man having to have your wife carry everything while you're trying to enjoy yourself."  (Id.)

Perez's testimony on his activities was nearly identical to Plaintiff's, as Plaintiff seems to acknowledge. (J. Stip. at 7 (noting that Perez "confirmed the testimony of [Plaintiff] as to his limited ability to do chores").) She testified that Plaintiff did some chores — washing dishes, making the bed, and watering the yard, the same ones Plaintiff testified to — but did not vacuum, mop, or take out the trash. (AR 73.) She stated that Plaintiff could "go the [sic] store, run errands and everything." (AR 74.) When asked by the ALJ why she believed Plaintiff was disabled, she answered that they could not go camping and ride bikes like they used to and she carried "all the equipment." (AR 75.) She said, "[H]e feels like he's not a man." (Id.) Because Perez's testimony did not add anything beyond Plaintiff's own testimony, the ALJ's discussion of daily activities applied with equal force to Perez's testimony.

The ALJ's other reasons for discrediting Plaintiff's allegations also applied to Perez's testimony. He discredited Plaintiff's allegations because they were inconsistent with the medical evidence. (AR 27-28); see Carmickle, 533 F.3d at 1161 (contradiction with medical record sufficient basis for rejecting claimant's subjective testimony). Plaintiff testified that despite two surgeries, he still experienced muscle spasms, cramps, and sharp, shooting pain in his hips and legs. (AR 44, 46, 51.) But as the ALJ noted, a February 22, 2012 CT scan showed "no significant bony spinal canal or neural foraminal stenosis." (AR 440-41.) Additionally, the findings from an April 17, 2012 EMG and nerve-conduction study of both lower extremities and lumbar paraspinals were "entirely within normal

limits" and "rule[d] out lumbar radiculopathy." (AR 442-45.) To the extent Perez testified that Plaintiff could not perform any work (see AR 75), the ALJ's reasoning applied equally to her testimony.

The ALJ also discredited Plaintiff's allegations of disabling pain because Plaintiff had not complied with his treatment regimen. (AR 26); see Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) (ALJ may rely on "unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment" in discounting claimant's testimony regarding severity of impairment). As the ALJ noted, despite doctors' recommendations that he receive physical therapy (see, e.g., AR 299, 302), Plaintiff testified that he "never had physical therapy for any of [his] surgeries" even though he had "heard a lot of scar tissue builds up" (AR 46-47). He acknowledged that the lack of therapy had "hindered [his] healing." (AR 47.) He explained ambiguously that his doctor and insurance company "could never get it worked out right," implying that he had not attended the sessions because they were "down the hill." (Id.) The ALJ's reasoning also applied in discrediting Perez's testimony that Plaintiff was unable to work.

In sum, Perez's testimony was nearly identical to Plaintiff's and did not describe any limitations beyond those Plaintiff himself described.[4]  See Molina, 674 F.3d at 1122.

---

[4] Plaintiff asserts that Perez's testimony was "important" because "she testified to his mental state." (J. Stip. at 7.) He overstates her testimony regarding his mental health, however; she testified only that Plaintiff's medication seemed to cause mood swings and that he was forgetful, stressed, and irritable.

Further, the ALJ extensively discussed Plaintiff's alleged limitations and rejected them based on specific, clear, and convincing reasons, a determination Plaintiff has not challenged on appeal. Because the evidence on which the ALJ relied to discredit Plaintiff's testimony also discredited Perez's, any error was inconsequential to the ultimate nondisability determination and was therefore harmless. Id.; see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) (when lay witness's testimony is similar to claimant's and ALJ gives clear and convincing reasons for rejecting claimant's testimony, "it follows that the ALJ also gave germane reasons for rejecting" lay witness's testimony).

Plaintiff is not entitled to remand on this ground.

### B. The ALJ Properly Considered the Treating Physician's Opinion

Plaintiff contends that the ALJ erred in failing to consider one finding of Dr. Sunny Uppal, his treating physician. (J. Stip. at 11-13.) Specifically, he asserts that the ALJ "did not address" Dr. Uppal's statement on March 16, 2010, that he should not perform heavy lifting, bending, or stooping. (Id.; see also AR 305.)

---

(See AR 73-74.) The ALJ's reasons for discounting Plaintiff's mental-health allegations (see AR 24-25) also applied to Perez's testimony, as her testimony overlapped with portions of Plaintiff's (see, e.g., AR 59 (Plaintiff testifying medication made him feel "cloudy" and he would "forget stuff constantly")). Indeed, Plaintiff does not challenge the ALJ's finding that his mental impairments were nonsevere. (AR 24-25.)

11

### 1. Relevant background

On December 11, 2009, Plaintiff started seeing Dr. Uppal, an orthopedic surgeon, for his leg and back pain. (See AR 314, 318.) An MRI revealed a five-millimeter herniated disc at L5-S1 that was "not responsive to conservative treatment." (AR 311.) Dr. Uppal recommended — and Plaintiff requested — surgery to perform anterior and posterior decompression and fusion. (Id.)

On January 8, 2010, before the surgery, Dr. Uppal diagnosed spondylosis[5] of L5-S1, noting again that the condition was "not responsive to conservative treatment." (AR 309.)

Plaintiff had back surgery on February 27, 2010. (See AR 371, 442.) On March 16, 2010, in a postoperative checkup, Dr. Uppal noted that Plaintiff's

> preoperative level of pain is essentially gone. He used to have severe pain in his leg, which is now gone. He is very happy.

(AR 306). Plaintiff's back exhibited 60 degrees of flexion and 10 degrees of extension, and straight-leg raising was negative. (Id.) He demonstrated motor strength of five out of five in ankle plantar flexion and dorsiflexion, quadriceps, and iliopsoas.[6] (Id.) Under the "Treatment Plan" heading, Dr. Uppal noted that "[d]o's and don'ts were explained to [Plaintiff]" and recommended that he continue his "home walking program" and

---

[5] Spondylosis refers generally to degeneration of the vertebrae. See Stedman's Medical Dictionary, supra, at 1678.

[6] The iliopsoas muscle is part of a group of muscles known as the hip flexors. See Hip flexor strain — aftercare, MedlinePlus, http://www.nlm.nih.gov/medlineplus/ency/patientinstructions/000682.htm (last updated May 15, 2013).

perform "[n]o heavy lifting, bending or stooping." (AR 305.)

On May 21, 2010, Dr. Uppal noted that Plaintiff's "preoperative level of pain ha[d] improved" but he continued to have "some degree of pain." (AR 303.) Plaintiff's back exhibited 60 degrees of flexion and 10 degrees of extension, and straight-leg raising was negative. (Id.) He demonstrated motor strength of five out of five in ankle plantar and dorsiflexion, quadriceps, and iliopsoas. (Id.) Plaintiff's FABER test was negative, which indicated "no hip pathology."[7] (Id.)

Plaintiff saw Dr. Uppal again on July 9, 2010. (AR 299-300.) Dr. Uppal again noted that Plaintiff's preoperative pain had improved but that he continued to have lower back pain. (AR 300.) Plaintiff's back exhibited the same flexion, extension, and motor strength as it did in May, and straight-leg raising and FABER tests were again negative. (Id.) In neither the May nor the July treatment plans did Dr. Uppal include a limitation on lifting, bending, or stooping. (AR 299, 302.)

2.   Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to

---

[7] The FABER test is used to assess the sacroiliac joint as a source of lower back pain. See Comprehensive Diagnostic Approach for the Sacroiliac (SI) Joint, Spine-health, http://www.spine-health.com/education-centers/sacroiliac-joint-disorders/physicians/comprehensive-diagnostic-approach-sacroiliac (last visited Feb. 9, 2015). FABER is an acronym for flexion, abduction, and external rotation. Id.

13

more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician.  Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant.  Smolen, 80 F.3d at 1285.  If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.  § 404.1527(c)(2).  If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors.  § 404.1527(c)(2)-(6).

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons.  See Carmickle, 533 F.3d at 1164 (quoting Lester, 81 F.3d at 830-31).  When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.  Id.  The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things.  § 404.1527(c)(3)-(6).

### 3. <u>Analysis</u>

In determining Plaintiff's RFC, the ALJ expressly rejected Dr. Uppal's March 16, 2010 statement that Plaintiff was "temporarily totally disabled" and similar state disability certificates completed by Dr. Darren Bergey. (AR 29; <u>see</u> AR 308, 311, 320, 328, 332, 487-89.) The ALJ noted that the phrase "temporarily totally disabled" was a "term of art in workers' compensation law that is not determinative" under Social Security law. (AR 29.) He found that the "temporarily totally disabled" determination was "not relevant" and had "no probative value." (<u>Id.</u>) He did not explicitly address the portion of Dr. Uppal's March 16, 2010 treatment note in which Dr. Uppal recommended that Plaintiff perform no heavy lifting, bending, or stooping. (<u>See</u> AR 25-30.)

Plaintiff asserts that the ALJ erred by failing to address that limitation. (J. Stip. at 11-12.) But Plaintiff takes Dr. Uppal's statement out of context and mistakenly characterizes it as a functional assessment. In actuality, the statement was one of several recommendations in Plaintiff's post-surgery treatment plan, not an opinion regarding Plaintiff's functional limitations. The "Treatment Plan" noted that "[d]o's and don'ts were explained to [Plaintiff]," and Dr. Uppal recommended that Plaintiff continue his "home walking program" and perform "[n]o heavy lifting, bending or stooping." (AR 305.) Significantly, Dr. Uppal did not include any such limitation in his May and July 2010 treatment plans. (AR 299, 302.) Thus, in context, Dr. Uppal's opinion was not that Plaintiff could not ever perform heavy lifting, bending, or stooping but that he should not do

15

those things during his post-surgery recovery.

In any event, the ALJ extensively referenced Dr. Uppal's findings in his decision, including the March 16, 2010 examination. For example, the ALJ noted Dr. Uppal's findings that Plaintiff's preoperative pain was "essentially gone." (AR 27 (citing AR 306).) Reviewing Dr. Uppal's treatment notes from March 16 to July 9, 2010, the ALJ observed that Plaintiff "was generally noted to have normal patellar and Achilles reflexes, ankle dorsiflexors, plantarflexors, quadriceps, and iliopsoas were all 5/5, and he was mostly negative for straight leg raising and Faber test." (AR 28 (citing AR 297-306, 394-411).) He also noted Dr. Uppal's findings that despite surgery and post-surgery treatment, Plaintiff continued to complain of pain, exhibited decreased range of motion in his back, had tenderness over the screw tops, occasionally tested positive in straight-leg raising, and had muscle spasms. (AR 27; see AR 404, 412, 415.) The ALJ also reviewed all of Dr. Uppal's examinations and Plaintiff's imaging from after the removal of his hardware on June 6, 2011 (AR 433-34), noting medical evidence that was inconsistent as well as consistent with Plaintiff's alleged functional limitations (AR 28; see AR 412). Nothing in the ALJ's decision suggests that he selectively analyzed the medical evidence, nor was he required to discuss every piece of evidence. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Dr. Uppal's medical findings were duly considered.

Plaintiff is not entitled to remand on this ground.

**VI. CONCLUSION**

Consistent with the foregoing, and under sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered AFFIRMING the decision of the Commissioner, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: February 13, 2015      _____
                              JEAN ROSENBLUTH
                              U.S. Magistrate Judge

---

[8] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."